**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No.10-cv-01501-CMA

**In re:**
DAVID A. MASCIO, d/b/a DM Capital, Inc., Mascio Asset Management, Inc.,
Mascio Asset Management, LLC; and,
MONICA L. MASCIO,

    Debtor.

DM CAPITAL, INC., f/k/a Mascio Asset Management, Inc.;
DAVID MASCIO; and,
MAM CAPITAL, LLC,

    Appellant,

v.

PAUL GRONEWOLLER and
GRONEWOLLER & ASSOCIATES, INC.,

    Appellee.

---

**ORDER AFFIRMING IN PART AND REVERSING IN PART
BANKRUPTCY COURT'S ORDER**

---

This matter is before the Court on Defendant-Appellant David Mascio's appeal of a Bankruptcy Court's Order that awarded damages to Plaintiff-Appellee Paul Gronewoller in the amount of $150,355.  (Doc. # 19-17.)  This Court has jurisdiction to review the final orders and judgments of the Bankruptcy Court pursuant to 28 U.S.C. § 58(a)(1), (c)(1) and Fed. R. Bankr. P. 8001(e), 8002.

## I. BACKGROUND

**A.   FACTS**

The following facts are undisputed and are taken from the Bankruptcy Court's June 9, 2006 Order (Doc. # 19-10), which was issued after a trial to the court was held in November, 2005. This Court will elaborate, as needed, in its analysis section.

Mascio owned and operated a business called Mascio Asset Management, Inc. ("MAM"), which provided financial and investment advisory services. Gronewoller met Mascio in January of 2000 and they decided to form MAM Capital, LLC ("Capital"), which would be the successor company to MAM and would provide similar services. To capitalize the new company, Gronewoller formed an entity called Gronewoller & Associates, Inc. ("Associates").

Associates and MAM entered into an Asset Purchase and Contribution Agreement (the "Agreement") on October 1, 2000,[1] pursuant to which (1) Associates would purchase a forty-nine percent interest in certain MAM assets for $164,640, and (2) the assets would be contributed and assigned to Capital. Associates, through Gronewoller, transferred $164,640 to MAM on January 1, 2001 ("the date of payment"), as required by the Agreement. At or about the same time, the MAM assets were contributed and assigned to Capital. In addition, prior to the transfer, Associates loaned $34,300 to Capital pursuant to a promissory note dated October 1, 2000.

---

[1] As noted by the Bankruptcy Court, the Agreement is dated October 1, 2001; however, the parties' testimony demonstrates that this is a typo.

Disputes over the business arose between Gronewoller and Mascio in the fall of 2001. At trial, Gronewoller asserted that Mascio locked him out of the business premises after he refused Mascio's offer to buy him out for less than fair market value. Capital ceased operations in December 2001 and Associates filed a lawsuit against Mascio and MAM in state court on December 13, 2001, alleging numerous causes of action.

Shortly before the case went to trial, Mascio filed for bankruptcy relief, and Gronewoller and Associates then commenced this adversary proceeding under 11 U.S.C. § 523(a), asserting that the debt owed them was not dischargeable in bankruptcy because it was incurred by fraud.

## B.    PREVIOUS COURT ORDERS

The Bankruptcy Court issued an Order on June 9, 2006, dismissing all claims against the corporate Defendants, Capital and MAM, and denying all relief requested by Associates. The Court also held that Gronewoller was not entitled to judgment on his claims against Mascio under § 523(a)(2)(B). (Doc. # 19-10.) The parties did not challenge these rulings.

However, the Bankruptcy Court found that Mascio's debt to Gronewoller was nondischargeable under § 523(a)(2)(A) because Mascio had (1) fraudulently represented to Gronewoller that MAM was an SEC registered company[2] and (2) failed

---

[2] "SEC registration indicates a business manages at least $25 million in assets. This provides a financial service business with the ability to attract institutional clients because the registration implies a level of assets that can withstand the volatility of the marketplace." (Doc. # 19-10 at 8-9.)

to disclose a February 4, 2000 letter from the SEC requiring MAM to de-register. The Bankruptcy Court awarded actual damages in the amount of Gronewoller's initial investment ($164,640), the unpaid balance of the promissory note ($29,381.28), plus prejudgment and postjudgment interest.[3]

Mascio appealed the June 9, 2006 Order to the United States District Court for the District of Colorado (the "District Court"). Mascio raised three issues on appeal: (1) whether the Bankruptcy Court erred in failing to determine the existence of a debt under state law before considering whether it was nondischargeable under § 523(a)(2)(A); (2) whether Gronewoller waived any state law claim of fraud in the inducement by his conduct after obtaining full knowledge of Mascio's misrepresentation; and (3) whether Gronewoller failed to prove any damages under state law resulting from Mascio's alleged fraud. (Doc. # 19-12 at 5-6.)

On November 13, 2007, the District Court issued an Order affirming in part and reversing in part the June 9, 2006 Order. The District Court remanded the proceeding for findings on Mascio's waiver defense under Colorado law and the determination of the proper measure of damages, if any, on Gronewoller's claim of nondischargeability of Mascio's debt under § 523(a)(2)(A). *See In re Mascio*, No. 06-cv-01780, 2007 WL 3407516, at *7 (D. Colo. Nov. 13, 2007) (unpublished).

On February 25, 2009, the Bankruptcy Court issued an Order (Doc. # 19-13), finding that Mascio had not established his waiver defense and, thus, Mascio's debt to

---

[3] The Bankruptcy Court's entry of judgment on June 9, 2006 in favor of Gronewoller for the value of the promissory note has not been disturbed by appeal.

Plaintiff was still nondischargeable under § 523(a)(2)(A), subject to the Court's determination of damages.  The Bankruptcy Court also ordered that the record be reopened for the limited purpose of allowing the parties to present evidence regarding "benefit of the bargain damages."[4]  A hearing was held on August 12, 2009 for the limited purpose of determining damages.

After the hearing on damages, the Bankruptcy Court issued an Order on February 11, 2010.  (Doc. # 19-15.)  The Bankruptcy Court determined that the actual value of MAM exceeded the value of the company as represented by Mascio. Consequently, the Court reasoned, Gronewoller suffered no detriment from his investment, and his benefit of the bargain damages totaled zero.  Gronewoller sought reconsideration.  (Doc. # 19-16.)

On May 13, 2010, the Bankruptcy Court granted in part and denied in part Gronewoller's Motion to Reconsider.  (Doc. # 19-17.)  Relevant to this appeal, the Bankruptcy Court found that it had erred by not considering testimony presented by Gronewoller at the damages hearing regarding various values as represented by Mascio that exceeded the agreed value in the Agreement.  At the hearing, Gronewoller provided five different estimates of value based on Mascio's various representations. The values as represented by Mascio ranged from $485,000 (the value that Mascio

---

[4] Under Colorado law, "the measure of damages in [fraud] cases is the 'benefit of the bargain' rule, designed to give a plaintiff his or her expectation interest for loss of bargain." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 n.5 (Colo. 1994).  Thus, a plaintiff is entitled to receive "the difference between the actual value of the property and what its value would have been had the representation been true."  *Otis & Co. v. Grimes*, 48 P.2d 288, 791 (Colo. 1935).

5

claimed the company was worth in late October 2000) to $712,684 (the value based on an SEC Form ADV stating that MAM had over $30 million in assets under management on December 28, 2000).[5] (*See* Doc. # 19-4 at 17:19-25:22; Doc. # 19-14 at 3.) Gronewoller also testified as to his different estimates of the actual value of MAM on the date of payment. His estimate of $337,905 was based on a MAM Assets Under Management Report from January 1, 2001 and his estimate of $428,070 was based on a MAM Global Portfolio Statement from December 31, 2000. (*See* Doc. # 19-4 at 9:17-17:11; Doc. # 19-14 at 3.)

Based on this testimony and supporting exhibits, the Bankruptcy Court reversed its finding that Gronewoller had not suffered any benefit of the bargain damages. The Bankruptcy Court calculated Gronewoller's damages by first averaging Gronewoller's five represented value estimates and the agreed value of $336,000 from the Agreement, to find an average represented value of $533,343 on the date of payment. The Bankruptcy Court then determined the actual value of the company on the date of payment by again averaging the two values that Gronewoller suggested, *i.e.*, $337,905 and $428,070, finding that the actual value was $382,987. The Court subtracted the

---

[5] Gronewoller's five values were derived from various representations made by Mascio. The representations were: Mascio's note (on a napkin) indicating that MAM was worth $485,000 (Value C), Mascio's claim to Gronewoller that investor Jim Sprout had offered $500,000 for the company (Value D), various assets under management reports generated during the summer of 2000, leading to a valuation of $558,875 (Value E), the midpoint of Gronewoller's initial valuation range of $515,000 to $700,000, which was $607,500 (Value F), and an SEC FORM ADV stating that MAM had $30,131,501 in assets, leading to Gronewoller's valuation of the company at $712,684 (Value G). (*See* Doc. 19-14 at 5-7, §§ C-G.)

averaged actual value from the averaged represented value to yield $150,355 in benefit of the bargain damages.[6]

## C. MASCIO'S APPEAL

On June 25, 2010, Mascio filed a Notice of Appeal and elected to have the appeal heard by District Court pursuant to Fed. R. Bankr. P. 8001(e). (Doc. ## 1, 2.) After full briefing by both parties, this case was reassigned to this Court on August 25, 2010. (Doc. # 24.) Mascio raises two issues on appeal. First, Mascio argues that the Bankruptcy Court erred in finding that he failed to establish his waiver defense under Colorado law. Second, Mascio claims that the Bankruptcy Court erred in finding that Gronewoller suffered any benefit of the bargain damages. (*See* Doc. # 7.)

## II. STANDARD OF REVIEW

The Bankruptcy Court's factual findings are subject to a clearly erroneous standard. *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010). Its legal conclusions are reviewed *de novo*. *Id*.

## III. ANALYSIS

## A. WAIVER OF FRAUD CLAIM

In early December, 2000, Gronewoller overheard Mascio directing an employee to revise an SEC Form ADV for resubmission to the SEC. Mascio informed Gronewoller that MAM had received a letter sent by the SEC on February 11, 2000 ("the

---

[6] However, although neither party raised the issue, it appears to this Court that the benefit of bargain damages should have been further reduced to reflect Gronewoller's 49% partial share in MAM.

Letter"), advising MAM to de-register with the SEC because it lacked sufficient assets under management to qualify for SEC registration. (Bankr. Ct. Trial Transcript ("Trial Tr."), Case No. 03-01482, Doc. # 252 at 49:5-50:21.) Mascio argues that Gronewoller's knowledge of the Letter, coupled with Gronewoller's subsequent transfer of funds in accordance with the Agreement, was sufficient to establish Mascio's waiver defense.

The defense of waiver prevents a party who learns of the fraud before affirming the agreement from "speculat[ing] upon the advantages or disadvantages of an agreement, receiv[ing] its benefits and thereafter repudiat[ing] all its obligations. *Tisdel v. Cent. Sav. Bank & Trust Co.*, 6 P.2d 912, 918 (Colo. 1931). To sustain the defense, "it must appear that the defrauded party, with **full knowledge** of the truth respecting the false representations, elected to continue to carry out the agreement." *Elk River Assoc.'s v. Huskin*, 691 P.2d 1148, 1154 (Colo. App. 1984) (emphasis added). Full knowledge entails "knowledge of the substantial and material facts constituting the fraud." *Gladden v. Guyer*, 426 P.2d 953, 955 (Colo. 1967).

Mascio's arguments regarding waiver rely entirely on the fact that Gronewoller learned of the Letter before the date of payment. Mascio contends that knowledge of the Letter provided Gronewoller with "full knowledge" that MAM was not actually registered with the SEC, thereby establishing Mascio's waiver defense. In response, Gronewoller argues that the Letter did not constitute full knowledge because Mascio continued to make false representations to Gronewoller **after** the revelation of the SEC letter. (Doc. # 19 at 27-28.)

This Court agrees with the Bankruptcy Court that discovery of the existence of the Letter did not supply Gronewoller with full knowledge of the truth with respect to the false representation.  First, the Letter pertained to MAM's assets in 1999, not 2000.  Second, the Letter was dated February 11, 2000, well before Gronewoller commenced negotiations with Mascio in the summer of 2000.  Lastly, numerous other documents, signed by Mascio and dated after February 11, 2000, corroborated the fraudulent representation that MAM was registered with the SEC.  These corroborating documents include client agreement forms stating that MAM was licensed with the SEC (Doc. ## 19-6, 19-7), and a post-February 11, 2000 application to the SEC, in which MAM claimed assets under management in excess of $25 million.  (Doc. # 19-8.)  Any concerns that might have arisen because of the Letter were alleviated by other documents corroborating Mascio's fraudulent representation that MAM had sufficient assets to qualify for SEC registration.  (Trial Tr. at 61-67.)

Given the date of the Letter, the year to which it pertained, and other documents corroborating the misrepresentation, this Court finds no clear error in the Bankruptcy Court's determination that Gronewoller did not waive his fraud claim by affirming the Agreement.  *See Huskin*, 691 P.2d at 1153 (the determination of waiver "involves questions of fact, particularly the fact of intent."); *Holland Furnace Co. v. Robson*, 402 P.2d 628 (Colo. 1965).

**B.     BENEFIT OF THE BARGAIN DAMAGES**

The parties set forth an "agreed value" of $336,000 in the Agreement.  At the hearing to determine damages, Gronewoller testified that the represented value of the company ranged from $485,000 to $712,684.  (*See* Doc. # 19-4, 19-14 at 3, 5-7, §§ C-G.)  Although the Bankruptcy Court initially equated the agreed value with the represented value, upon reconsideration, the Bankruptcy Court found that it had erred by not considering Gronewoller's testimony regarding the various values above the agreed value.  (Doc. # 19-17.)   Mascio contends that the Bankruptcy Court erred by considering this "extrinsic evidence."

In *Keller v. A.O. Smith Harvestore Products, Inc.*, the Colorado Supreme Court found that a general integration clause in a contract does not bar the admission of extrinsic evidence in a claim for negligent misrepresentation.[7]  819 P.2d 69 (Colo. 1991) (en banc).  Thus, under Colorado law,"[t]he parol evidence rule does not bar the admission of evidence to establish tort claims not specifically prohibited by the terms of an agreement."  *Id.* at 73.  Fraudulent misrepresentations (such as Mascio's representation that MAM was SEC registered) remove a matter from contract law and place it in tort law.  *See id.* at 73 ("the parol evidence rule . . . ha[s] no force in a tort action alleging fraudulent misrepresentation in the inducement to execute an agreement.").

---

[7]  Integration clauses generally permit contractual parties to limit future disputes to reciprocal obligations in the document.  Thus, parol evidence, offered to establish the existence of prior or contemporaneous agreements, is usually inadmissible to challenge the terms of the contract.  *Keller*, 810 P.2d at 72.

Mascio argues that an express contractual term (the $336,000 agreed value) is controlling when negotiated by the parties and not found to be misleading. Mascio cites several cases in support of his argument that the Bankruptcy Court should not have considered Gronewoller's testimony regarding other values. *See Universal Drilling Co. v. Camay Drilling Co.*, 737 F.2d 869, 872-73 (10th Cir. 1984) (applying Colorado law) (excluding extrinsic evidence of misrepresentation where the defendant had expressly told the plaintiff not to rely on any representations other than the ones set forth in the contract); *Trimble v. City and Cnty. of Denver*, 697 P.2d 716, 723 (Colo. 1985) (overruled by statute on other grounds) (finding that the plaintiff was bound by contractual obligation where the plaintiff had affirmed an agreement containing an express covenant not to sue). In this case, the record supports Gronewoller's contention that the "agreed value" was merely intended to be a transactional price, and not the represented value. Moreover, Mascio expressly represented that the company was worth more than $336,000.

Mascio also contends that Gronewoller could not reasonably rely on any representation besides the agreed value stated in the Agreement. During negotiations, after Gronewoller had already agreed to purchase 49% of the company for $164,640, Mascio represented that the company was actually worth $485,000 and requested that Gronewoller either pay more or receive only a 35% share of the company. Gronewoller rejected this request. (Trial Tr. at 166:7-167:14.) Mascio contends that Gronewoller cannot have reasonably relied on a representation that he rejected. This argument


defies common sense. Refusing to pay more is not akin to rejecting a representation of value. In fact, Gronewoller testified that he believed, based on Mascio's representations, that the company was worth more than $485,000. (Doc. # 19-4 at 19:6-24:9.) Thus, the fact that Gronewoller only paid $164,640 has no bearing on whether his reliance on other representations was reasonable.

For the foregoing reasons, the Bankruptcy Court did not err by considering Gronewoller's testimony concerning the represented value of the company or by finding that Gronewoller reasonably relied on Mascio's various representations.

## C.     RESCISSION DAMAGES

Gronewoller requests, in the event that this Court reverses the Bankruptcy Court award of benefit of the bargain damages, that this Court remand the case back to the Bankruptcy Court for a determination of whether Gronewoller actually elected benefit of the bargain damages in lieu of rescission damages.[8]

To the extent that Gronewoller appeals the Bankruptcy Court's decision not to reopen the record to determine whether Gronewoller elected to affirm the Agreement, the Court finds no error. The first time that this case was appealed to District Court, the late Judge Figa found that Gronewoller elected to affirm the Agreement and recover benefit of the bargain damages, rather than seeking rescission damages. *In re Mascio*, 2007 WL 3407516, at *6. If Gronewoller wished to contest this finding, he should have

---

[8] "A plaintiff who has been fraudulently induced to enter a contract may either rescind the contract or affirm the contract and recover in tort for the damages caused by the fraudulent act." *W. Cities Broadcasting, Inc. v. Schueller*, 849 P.2d 44, 48 (Colo. 1993).

appealed the matter back in 2007.  The Court's jurisdiction in this case is derived from 28 U.S.C. § 158(a)(1), which limits this Court's jurisdiction to review of the final orders and judgments of the Bankruptcy Court.

**D.     CALCULATION OF DAMAGES**

Although neither party appealed the Bankruptcy Court's calculation of damages formula, this Court may raise an issue *sua sponte* "when the proper resolution is beyond doubt and the failure to address the issue would result in a miscarriage of justice." *Counts v. Kissack Water*, 986 F.2d 1322, 1325-26 (10th Cir. 1993).  The Court recognizes that it should exercise its authority to raise issues *sua sponte* with the greatest restraint, but the interests of justice require intervention in this case.

The Bankruptcy Court cited the proper standard, but failed to properly apply it. In the February 25, 2009 Order, the Bankruptcy Court stated that its task was to determine "the difference between the value of the 49% investment in the business as represented by Mascio and the actual value of the investment." (Doc. # 19-13 at 10.)  In the May 13, 2010 Order, however, the Bankruptcy Court's damage calculation did not account for the fact that Gronewoller only purchased a 49% share of MAM's assets. (Doc. # 197-17 at 8.)  This was clear error.

Furthermore, the Bankruptcy Court should have looked only at the actual and represented value of the company on the date of payment.  Under Colorado law, Gronewoller is entitled to receive "the difference between the actual value of the property *at the time of purchase* and its value at that time had the representation been

true." *Colorado Performance Corp. v. Mariposa Assoc's.*, 754 P.2d 401, 408 (Colo. App. 1987) (quoting *Wagner v. Dan Unfug Motors, Inc.*, 529 P.2d 656, 657 (Colo. App. 1974) (emphasis in original); *Estate of Korf v. A.O. Smith Harvestore Products, Inc.*, 917 F.2d 480, 483 (10th Cir. 1990) (applying Colorado law).  In the damage calculation, the Bankruptcy Court averaged all of the represented value estimates testified to by Gronewoller without filtering the evidence so that it pertained only to the represented value at the "time of purchase."[9]  Under Colorado law, values prior to or subsequent to the date of payment are irrelevant.  Although the Bankruptcy Court's decision to average the various represented values is understandable given that Gronewoller testified to numerous values, it was error for the Bankruptcy Court to consider evidence of value at times other than the date of purchase.

Accordingly, the award of $150,355 must be vacated and the case remanded for further proceedings consistent with this opinion.  On remand, the Bankruptcy Court should apply the standard that it set forth in its February 25, 2009 Order.  That is, **Gronewoller should receive 49% of the difference between the actual value of the company and the represented value of the company on the date of purchase**.  To the extent that the Bankruptcy Court lacks sufficient evidence to determine the actual and represented values on the date of purchase, the Bankruptcy Court should reopen the record.

---

[9]  The Bankruptcy Court's decision to average the two actual values testified to by Gronewoller was reasonable given that the values were derived from reports at the time of purchase.

## IV. **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that:

1. The Order of the Bankruptcy Court dated May 13, 2010 is AFFIRMED IN PART and REVERSED IN PART;

2. The Judgment of the Bankruptcy Court dated June 10, 2010 is AFFIRMED IN PART AND REVERSED IN PART

3. This matter is REMANDED to the Bankruptcy Court to calculate damages in accordance with this opinion.

DATED:  March   30   , 2011

                                                             BY THE COURT:

                                                             _____
                                                             CHRISTINE M. ARGUELLO
                                                             United States District Judge